Denise De Mory (SBN168076)
Richard Lin (SBN 209233)
Aaron Hand (SBN 245755)
Brenda Entzminger (SBN 226760)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
ddemory@bdiplaw.com
rlin@bdiplaw.com
ahand@bdiplaw.com
bentzminger@bdiplaw.com

Attorneys for Defendant/Counter-Claimant
*Agilent Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYNTHEGO CORPORATION,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>　v.<br><br>AGILENT TECHNOLOGIES, INC.,<br><br>　　　　Defendant/Counter-Claimant. | CASE NO.  5:21-cv-07801-EJD<br><br>**DEFENDANT/ COUNTER-CLAIMANT AGILENT TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF SYNTHEGO CORP.'S MOTION TO STAY THIS CASE PENDING *INTER PARTES* REVIEW** |

**REDACTED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD ............................................................................................................6

III. ARGUMENT .........................................................................................................................6

    A. The Court set this case on an expedited schedule after the IPRs were filed, and the parties are deep into that schedule. ...............................................................6

    B. The IPRs will not resolve, or even greatly simplify, these proceedings. .................9

    C. A stay will prejudice Agilent and result in a clear tactical advantage for Synthego. ..................................................................................................................11

        1. There are compelling reasons for this case to proceed in this forum. ........11

        2. The substantial prejudice to Agilent outweighs any benefit of a stay, where the parties are direct and sole competitors in the full service gRNA market. ................................................................................................13

        3. Synthego's forum shopping and delay weighs against granting a stay. ..............................................................................................................14

IV. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. et al. v. Sanofi Aventisub LLC et al.*,
  872 F.3d 1367 (Fed. Cir. 2017) ............................................................................................... 5

*Asetek Holdings v. Cooler Master Co., Ltd.*,
  No. 13-cv-00457-JST, 2014, WL 1350813 (N.D. Cal. Apr. 3, 2014) ................................ 8, 14

*Cronos Technologies LLC v. Expedia, Inc.*,
  No. 13-1538-LPS, 2016 WL 1089752 (D. Del. Mar. 21, 2016) ............................................ 15

*Forest Labs., Inc. v. Ivax Pharmaceuticals, Inc.*,
  438 F. Supp. 2d. 479 ............................................................................................................. 12

Impax Labs., Inc. v. Aventis Pharms. Inc.,
  545 F.3d 1312 (Fed.Cir.2008) ............................................................................................... 11

*In re Donohue*,
  766 F.2d 531 (Fed. Cir. 1985) ............................................................................................... 12

*In re Morsa*,
  803 F.3d 1374 (Fed. Cir. 2015) ............................................................................................. 11

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988) ........................................................................... 5, 11, 12, 13

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
  No. 16-cv-00791-RS, 2017 WL 1316549 (N.D. Cal. Apr. 10, 2017) .................................... 14

*Live Nation Merch., Inc. v. Miller*,
  No. 13-CV-03936 CW (NC), 2014 WL 1877912 (N.D. Cal. May 9, 2014) .......................... 10

*Net Fuel, Inc. v. Cisco Systems, Inc.*,
  No. 5:18-cv-02352-EJD, 2020 WL 836714 (N.D. Cal. Feb. 20, 2020) ............................... 6, 8

*Sanofi-Synthelabo v. Apotex, Inc.*,
  550 F.3d 1075 (Fed. Cir. 2008) ............................................................................................. 12

*Space Data Corp. v. Alphabet Inc.*,
  No. 16-cv-03260-BLF, 2019 WL 1131420 (N.D. Cal. Mar. 12, 2019) ................................... 6

*Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*,
  No. 18-cv-06737-JST, 2019 WL 1905161 (N.D. Cal. Apr. 29, 2019) .................................... 6

**Statutes**

35 U.S.C. § 316(a)(5)(A) ............................................................................................................ 12

35 U.S.C. §271(e)(1) ................................................................................................................... 11

**Regulations**

37 C.F.R. § 42.51 ................................................................................................................ 13

## I. INTRODUCTION

Synthego's request for a stay should be denied because of the advanced state of this case, the improbability that the IPRs will simplify matters for trial, and the likelihood that Agilent will suffer irreparable harm if a stay is granted, particularly given the nature of the prior art challenges at issue here, which as Synthego itself acknowledges, are much more amenable to being addressed in view of a full discovery record that is only available in this Court. Staying this case now would result in an unfair tactical advantage because Synthego has refused to respond to discovery but plans to use discovery that it got from Agilent in the IPRs. At a minimum, discovery and claim construction, including the tutorial, should proceed as set forth herein in parallel with the IPR proceedings.

This Court already set an expedited schedule in this case in full view of Synthego's IPRs and awareness that institution decisions were due on or before late July. In February, weeks after Synthego's IPRs were filed and brought to the attention of the Court, the Court set an expedited schedule in this case that provides for the completion all fact and expert discovery, as well as summary judgment briefing essentially this year (by January 6, 2023), regardless of whether the IPRs were instituted, thereby clearing the road for trial prior to a Final Written Decision from the PTAB. The Court should proceed to resolve this case on the schedule it already set, even after Synthego filed its IPRs and indicated it intended to seek a stay.

The parties are deep into the Court's expedited schedule. The claim construction process is well underway, and both the tutorial, which will provide the Court with additional needed context about this dispute, and the *Markman* hearing, will be completed in August. In its Petitions, Synthego took the position that no claims need to be construed. But here, Synthego took a contrary position, and asserts claim construction on a number of terms, the result of which that may well undermine its Petitions. Infringement and invalidity contentions have been exchanged. Fact discovery closes in ninety days. Expert discovery closes two and a half months later, and summary judgment motions will be briefed in just over six months.

Synthego claims that there is much remaining to do in discovery, but it knows that what remains is really its own long over-due compliance with its discovery obligations and/or its decision

to serve written discovery requests only recently. But Synthego's failure to meaningfully participate is no justification for a stay, particularly where Synthego waited eight months to seek its stay. Agilent, for its part, completed the majority of its document production in February of this year (95% of the documents produced in this case were produced by Agilent), has offered four witnesses for deposition, and stands ready to complete its own discovery and provide any additional discovery that Synthego needs before the close of discovery.

Synthego tellingly does not provide any specifics regarding the discovery that remains because it knows that this case is very straightforward in many ways. The asserted claims are directed to chemically modified guide RNAs that are functional for the CRISPR system, and specify a variety of specific chemical modifications at particular locations. Verifying infringement requires only a straightforward comparison of the sequences that Synthego makes, uses and sells with the variations of modifications in the claims. And there is no doubt that the modifications are there. Synthego has admitted that it did not innovate on the chemistry but instead uses at least the modifications in the Hendel paper, which no one disputes are covered by the claims. Many of the claimed modifications can be ordered using a drop-down menu on Synthego's website. For example, this is a drop-down option on the Synthego website:

> Modifications
> No modifications
> ✓ 2'-O-Methyl at 3 first and last bases, 3' phosphorothioate bonds between first 3 and last 2 bases
>
> Chemical modifications provide superior editing in most cell types, including primary cells and stem cells.

These modifications exactly match the modifications called out in several asserted claims, and even Synthego boasts of about their functionality. In fact, Synthego did not contest infringement in its opposition to Agilent's preliminary injunction motion.[1] Once Synthego completes its production of documents identifying what modifications it has made, used or sold, summary judgment of infringement should be a straightforward exercise.

---

[1] Damages are similarly straightforward. Virtually all of Synthego's sales are infringing. Its business is selling modified guides or using modified guides to engineer cells. Synthego's safe harbor claims are equally straightforward. For each sale, Synthego can either prove that its guides are being used solely for FDA approval, or not. To date, Synthego has not established that a single guide is subject to the safe harbor defense found in §271(e)(1).

Synthego knows this—and that is why, to date, it has improperly delayed the progress of this case by redacting from production documents the actual sequences for the guides it has sold—in particular for larger-scale orders of custom products. And Synthego has been coy about whether it is withholding other documents revealing custom modified guides. Synthego should be ordered to produce this information forthwith (regardless of a stay) for two reasons.

First, the issue is black and white. Other than to create the impression that little discovery has been done to support the instant motion in the event its IPRs were granted, Synthego has never had any basis in the law to withhold documents regarding the sequences of the modified guide RNA it has sold or to redact information, particularly highly pertinent non-privileged technical and business information, from documents produced designated as outside counsel under the default protective order.[2] This discovery was due in March. After Synthego finally produced a handful of documents in late April, Agilent asked for fulsome technical documents and unredacted copies[3] of the documents it has produced in writing over a half-dozen times and on multiple meet-and-confer calls. They should be produced immediately.

Second, consistent with PTO statistics, the institution decision confirms that this case will proceed regardless of the outcome of the IPRs.[4] Notably, the PTAB's preliminary opinion indicates that a number of claims are likely to survive the IPR proceedings. Agilent has recently learned Synthego infringes one of those claims, claim ■ of the '034 Patent, even though it is not a standard modification ("drop-down menu") option. Agilent is entitled to know now which of the other claims that the PTAB has indicated will likely emerge from the IPRs that Synthego also practices. Synthego started this fight, seeking a declaration that it did not infringe. But Synthego has strategically delayed providing discovery on the very issues presented in its complaint in the hopes

---

[2] The parties have agreed to operate under the default protective order and have been doing so. Agilent also offered to officially enter the default order as the protective order in this case.

[3] Minutes before the filing of this reply, Synthego produced documents that an email from Synthego's counsel indicates are unredacted copies of documents originally produced in April. These documents have not yet been reviewed.

[4] Although the PTAB institutes 82% of all biotechnology/pharma IPRs, only 17% of total patents challenged had all claims cancelled. *See* PTAB Outcomes by Patent (FY21: Oct. 1, 2020 to Sept. 30, 2021), *at* https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2021__roundup.pdf (slide 12).

that the case would get stayed before it was forced to reveal the extent of its infringement. But this case is at least coming back on '034 claim ■. Agilent is entitled to know the full extent of Synthego's infringement, particularly of claims that are highly likely to survive—even if the case is stayed.

This Court can and should decide this case on the schedule it already set. Failing to do so will result in significant prejudice to Agilent. As explained in its preliminary injunction motion and reply, Agilent is already suffering irreparable harm as Synthego—Agilent's direct and sole competitor in the full-service gRNA market—continues to willfully infringe Agilent's patents and erode the price of practicing products. Synthego's proposed stay will further advance Synthego's plans to permanently disrupt a "game-changer," multi-billion dollar market with its acquisition of sticky customers, poaching of Agilent's customers, cut-rate pricing, and decision to increase market share at the expense of important innovators like Agilent who have invested substantially in developing ground-breaking technology and securing (what should be) enforceable IP rights. Any chance that the issues in this case could be simplified if the Court awaits the outcomes of *both* the PTAB and the Federal Circuit is simply not enough to outweigh the certain prejudice to Agilent, and the clear tactical advantage to Synthego, if a stay is granted.

Separately, there are compelling reasons for this case to proceed in this forum in parallel with, or in advance of, a PTAB decision in order to avoid giving Synthego an unfair tactical advantage. *Synthego chose this forum*, and should not be heard to complain about proceeding in this forum, which has a local interest in this dispute. It is also the only forum in which the fulsome record that is necessary to decide the invalidity issues can actually be developed. Synthego itself seeks this Court's assistance in supplementing what is available in IPR proceedings with the depositions that it took of percipient Agilent witnesses and regarding Agilent documents. That is because the primary issue with regard to anticipation is whether the Pioneer Hi-Bred reference that Synthego relies on is enabled.[5] Agilent bears the burden of proving that Pioneer Hi-Bred is not

---

[5] Agilent disagrees with the PTAB's preliminary recitation of the law and more importantly, interpretation of the facts Agilent set forth in its limited preliminary response. But the PTAB was required to resolve all factual inferences in favor of Synthego in making its institution decision, so its preliminary decision must be interpreted in that light.

enabled, and although enablement is ultimately a question of law, it depends on underlying factual inquiries into undue experimentation, as articulated in *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988), including: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance disclosed, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability in the art, and (8) the breadth of the claims.

Critically, the evidence that Synthego seeks to use from Agilent depositions and documents in this case relates precisely to these factors. *See*, *e.g.*, Dkt. 90 at 2 (Synthego seeks to unseal "testimony regarding Agilent's knowledge of the state of the art of RNA modifications based upon publicly available publications and prior art during the relevant timeframe" for use in the IPRs.) But the inquiry is not about what Agilent knew. It is about the state of the art, the predictability of the art, et cetera. Agilent should be permitted to develop an equal and opposing factual record in this case, via discovery of Synthego and third parties. Indeed, Agilent has served discovery on Synthego seeking exactly this information, which Synthego has to date refused to provide—while at the same time seeking to use the discovery Agilent provided in good faith in accordance with this Court's instructions. *See* Dkt. 49 at 2.[6]

This case should not be stayed, and instead should proceed on the expedited schedule that this Court has already set. At a minimum, discovery should not be stayed and the tutorial and claim construction hearing should proceed because: this case will not be fully resolved by the IPRs; the terms proposed for construction apply to all claims; the parties are already deep into this process; Synthego has taken inconsistent positions regarding claim construction that should be resolved; and even Synthego itself concedes that the record regarding whether Pioneer Hi-Bred is enabling would be advanced by evidence beyond that which can be obtained in the IPR proceedings. Because Agilent bears the burden of proof on this issue on whether Pioneer Hi-Bred is enabled, it surely should be permitted to pursue that discovery in this forum, chosen by Synthego.

---

[6] Synthego may contend that it did not enter the market until after the patents were filed, but it is quite clear that evidence that tends to show unpredictability, for example, that post-dates a filing is relevant to the enablement inquiry. *See Amgen Inc. et al. v. Sanofi Aventisub LLC et al.*, 872 F.3d 1367, 1375 (Fed. Cir. 2017).

## II. LEGAL STANDARD

"Courts have 'no obligation to stay proceedings pending parallel litigation in the PTAB.'" *Net Fuel, Inc. v. Cisco Systems, Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 836714, at *1 (N.D. Cal. Feb. 20, 2020) (denying stay after IPR instituted) (*quoting Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260-BLF, 2019 WL 1131420, at *1 (N.D. Cal. Mar. 12, 2019) (denying stay request after IPR instituted)). While the "Court ultimately decides whether to issue a stay on a case-by-case basis," case law supplies general considerations to consider "when a defendant in a patent infringement action petitions for IPR and then moves the district court to stay the proceedings," including: "(1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Net Fuel*, 2020 WL 836714, at *1 (internal quotation omitted). "In assessing the final factor—whether a stay will unduly prejudice or tactically disadvantage the nonmoving party— courts assess four subfactors: '(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties.'" *Net Fuel*, 2020 WL 836714, at *2 (*quoting Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*, No. 18-cv-06737-JST, 2019 WL 1905161, at *5 (N.D. Cal. Apr. 29, 2019)). And here, where the parties are direct competitors, the nonmovant seeks a preliminary injunction, and the movant is not "a defendant in a patent infringement action" but instead a plaintiff that timed its declaratory relief action, timed the IPR filings, and timed this motion to stay, the Court's case-by-case inquiry is especially important.

## III. ARGUMENT

### A. The Court set this case on an expedited schedule after the IPRs were filed, and the parties are deep into that schedule.

Synthego promised a motion to stay in its original complaint on October 5, 2021. But this case has now progressed substantially in the eight months since Synthego indicated it would move to stay these proceedings.

In the initial Case Management Conference, and after Synthego had already filed its IPRs, Synthego unsuccessfully tried to convince this Court that Agilent's motion for preliminary

injunction should not be heard until after the PTAB's three-month period for institution had run, in late July 2022. 1/20/2022 Hr'g. Tr. 11:2-14. Synthego argued that not only would the parties need to do "at lot of the case work" for that PI, including fact and expert discovery, but also highlighted this Court's own substantial work required to prepare for the PI hearing. *Id*. But the Court rejected that request, set this case on an expedited schedule, and as Synthego predicted, a significant amount of work has been done.

For example, Synthego has taken three 30(b)(6) depositions covering six topics, an expert deposition, and propounded numerous document requests and interrogatories. Agilent has, in turn, responded to Synthego's discovery requests, produced over 83,000 pages of documents, served a 67-page expert report detailing Synthego's infringement, propounded interrogatories and document requests, and retained and disclosed both technical and financial experts. Further, the parties have exchanged infringement contentions, invalidity contentions, damages contentions, and preliminary claim constructions. Dkt. 51 at 3. By Synthego's admission therefore, the nature of the completed discovery to prepare for the PI hearing is more burdensome on the parties than the discovery that remains in this case, and it has been completed. *Cf*. 1/20/2022 Hr'g. Tr. 11:2-14.

In addition to the case's accelerated pace thus far, the tutorial and *Markman* hearing is set for August 31, 2022. Dkt. 51 at 3. Fact discovery will be complete only a month later, on September 30, 2022, and expert discovery will be finished by December 9, 2022. *Id*. The parties' dispositive motions will be filed by January 6, 2023; the case can be ready for trial shortly thereafter. *Id*. at 4. With the case moving apace, and a trial setting conference on September 1, 2022, there is no reason that trial in this action cannot go forward in April 2023. *Id*. at 3. Thus, by contrast to the expedient resolution that can be achieved in this action initiated by Synthego, any stay that awaits a binding decision from the PTAB and Federal Circuit would halt Agilent's enforcement rights against its direct competitor for two to three years. And this would have the ripple effect of impacting all of Agilent's other enforcement or licensing efforts.

There are compelling reasons to proceed with claim construction on the current schedule. In the IPR proceedings, Synthego contended that no claim construction was necessary. *See* Dkt. 77-3 at PageID 37; Dkt. 77-4 at PageID 35. But in this case, Synthego now argues that three claim

terms should be given very specific meanings that could potentially undermine its Petitions. Put simply, this is more of Synthego's gamesmanship. Synthego should not be able to take one position in the IPRs and preserve for itself another position in this proceeding while it is stayed. The Court can and should decide this now.

Aside from contending that not much discovery has been done, it is telling that Synthego does not identify any particular discovery from Agilent that remains outstanding. That is because there is little to none. As to Synthego, but for its delays and improper discovery tactics, which should not inure to its benefit on a motion to stay, Agilent expects that there will be little issue completing discovery. Agilent already served discovery requests in February; but Synthego has only produced 195 improperly redacted documents to date. Synthego simply needs to tender responsive documents, including documents sufficient to show the structures of the modified guide RNAs that it made, used, or sold (i.e., sequences showing modifications and their locations); sales and financial information; information regarding its research and development (including functionality and unpredictability of modifications); and how Synthego itself uses modified guides in the manufacture of its products and delivery of services to its customers. To the extent that Synthego wants to establish that any use is covered by the safe harbor, it has had plenty of time to do that—it was the original basis for Synthego's complaint last October.

More fundamentally, apart from the literal advancements in this proceeding, the real issue assessed in weighing the first factor is whether the investment by the time of the stay motion is so substantial that "there will be less benefit and greater risk of prejudice to the other [non-moving] party." *Net Fuel,* 2020 WL 836714, at *1 (denying stay after IPR instituted, based on the advanced stage of the case, despite finding the second factor neutral and the third factor favoring a stay) (*citing Asetek Holdings v. Cooler Master Co., Ltd.*, No. 13-cv-00457-JST, 2014, WL 1350813, at *3 (N.D. Cal. Apr. 3, 2014)). Courts like that in *Asetek* acknowledge that where discovery is not complete and a trial date has not been set, courts are more likely to issue stays, but "[t]hat is because an early stay may save the parties and the Court the unnecessary expenditure of significant resources," whereas "a late stay necessarily produces less benefit and enhances the possibility of prejudice." *Asetek Holdings*, 2014 WL 1350813, at *3. Regardless of whether the trial date has

been set, therefore, Agilent's substantial and costly investment in expert and fact discovery, as well as its substantial motion practice, is not in dispute. And here, where Agilent was brought in as a defendant to Synthego's declaratory judgment action months before Synthego's belatedly filed IPRs, and where "a lot of the case work" has already been done, the benefits typically achieved by an "early stay" are attenuated, while the prejudice to Agilent is certain. *See id.*; 1/20/2022 Hr'g. Tr. 11:2-14.

### B. The IPRs will not resolve, or even greatly simplify, these proceedings.

Synthego's motion rests on the faulty assumption that its IPRs will substantially simplify the issues for this Court to adjudicate and conserve judicial and party resources. But here the PTAB has already "expressed skepticism" regarding Synthego's showing of obviousness for various dependent claims of the '034 Patent, "e.g., claims 5-13 and 20-28," and claims 14 and 29 ("ground six") (Dkt. 77-1 at 31), as well as "claims 8, 9, 11, 16, 18, 19, 25, and 26" of the '001 Patent (Dkt. 77-2 at 30-31) in light of "the unpredictability of the effects of RNA modifications on various RNA or oligonucleotide types." This is consistent with the PTO's statistics showing that 82% of the bio/pharma petitions are granted, but only 17% result of all petitions result in the cancellation of all challenged claims.

Notably, claim ▬ of the '034 Patent is one of those claims. And although the claim ▬ modification is not available on a pull-down menu on the Synthego website, Agilent has learned in discovery that this claim is in fact practiced by Synthego. Dkt. 85-5 (PI Reply Ex. 56) at 1743, 1744, 1745, 1775 (showing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬). Thus, the case will very likely proceed as to at least this claim, which implicates all of the claim terms at issue in the claim construction proceedings, regardless of the outcome of the IPR proceedings.

Moreover, there are other claims that Synthego may well practice. In footnote 1 of its Motion, Synthego suggests that Agilent knows that Synthego does not practice claims 6, 7, 22 and 23 of the '034 Patent, or claims 8, 11, 16, 19, and 26 of the '001 Patent because Agilent's infringement contentions recite infringement of those claims "on information and belief." Mtn. at 2, fn. 1. But as with regard to its practice of claim ▬ of the '034 Patent, Agilent's contentions are

information and belief solely because Synthego does not make all of its product information (including available custom modifications) publicly available. And in this case, Synthego has systematically obstructed inquiry into both the nature and locations of modifications associated with its actual sales—and in particular its sales of customized and non-standard guides—by redacting that information from all its production documents.[7] Exhibit 71 to Agilent's preliminary injunction reply brief (Dkt. 85-11) (SYNTHEGO-AGI00004065-4079) is instructive:

[redacted]

To be clear, Synthego applied them to each and every document *as produced in discovery*. While Synthego finally unredacted certain information from exhibits it submitted with its opposition to Agilent's preliminary injunctions motion,[8] Agilent has been asking for fulsome document productions, including detailed information about all modifications offered or used by Synthego, as well as the unredaction of the limited materials that it did produce since at least May 4. *See* Dkts. 86-4 to 86-7, 93 (PI Reply Exs. 66-69). This obfuscation is not permitted under the Federal Rules of Civil Procedure. *Live Nation Merch., Inc. v. Miller*, No. 13-CV-03936 CW (NC), 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (ordering reproduction of unredacted version of documents). If the information that Synthego redacted (or otherwise failed to produce) implicate claims that the PTAB has already found are not likely to be found invalid, this provides a further

---

[7] Synthego has repeatedly pointed Agilent to a single document describing Synthego's Product Intake Process, which is also the only document it cited in its P.L.R. 3-4(a) disclosures. Dkt. 86-8 (PI Reply Ex. 70) at 35 & Dkt. 85-5 (PI Reply Ex. 56). [redacted]

[8] *See also* Dkt. 76-1, Nowatzke Decl., Exs. H, K-O, U, X.

compelling reason that Court should not stay this proceeding.

Even if all claims are left intact, however, this Court will, by Synthego's own admission, be left to adjudicate "substantial numerous invalidity arguments" not raised in the PTAB. *See, e.g.*, De Mory Decl., Ex. 1 & 2 (Synthego's Replies to Patent Owner's Responses in IPR2022-00402, -00403) at 2 ("The invalidity grounds in the Petition are a mere subset of substantial numerous invalidity arguments Petitioner presents in district court."). Indeed, by the assertions of Synthego's own Complaint, estoppel would do little to streamline a case initiated on safe harbor grounds having nothing to do with the invalidity challenges pursued in the IPRs. Dkt. 1 (alleging non-infringement based *solely* on 35 U.S.C. §271(e)(1)).

### C. A stay will prejudice Agilent and result in a clear tactical advantage for Synthego.

#### 1. There are compelling reasons for this case to proceed in this forum.

The PTAB's institution decisions also provide strong support for proceeding in this forum even as to the claims which the PTAB indicated that "at least facially" a prior art reference like Pioneer Hi-Bred (without any disclosure of the claimed functionality, let alone demonstration of operability) "need not disclose test data to support its teaching that the modified crRNAs in Table 8 have the recited guide RNA functionality." Dkt. 77-1 at 29; Dkt. 77-2 at 29. The PTAB itself indicated that a more fulsome record will be required for consideration of the petitions. Dkt. 77-1 at 29 (noting that "this case is still at a preliminary stage and the record is not fully developed"), 31 (discussing need for further factual development on unpredictability); Dkt. 77-2 at 29, 31 (same).

Notably, one of Agilent's primary contentions regarding Pioneer Hi-Bred is that it is not enabled. To be enabling, a reference must "enable one of ordinary skill in the art to make the invention without undue experimentation." *Impax Labs., Inc. v. Aventis Pharms. Inc.,* 545 F.3d 1312, 1314 (Fed. Cir. 2008). Determining enablement is a question of law based on underlying factual determinations. *In re Morsa*, 803 F.3d 1374 (Fed. Cir. 2015). The list of factual inquiries relating to whether a person of ordinary skill in the art could make the claimed invention without undue experimentation, as articulated in *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988), include:

(1) the quantity of experimentation necessary, (2) the amount of direction or guidance disclosed, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability in the art, and (8) the breadth of the claims.  Agilent bears the burden of overcoming that Pioneer Hi-Bred is presumed enabled.

Synthego pointed to four proposed modification designs in its Petition from Table 8 of Pioneer Hi-Bred.  The PTAB acknowledges that Agilent demonstrated that these included non-functional designs.  This should have been enough.  *See, e.g.*, *Forest Labs., Inc. v. Ivax Pharms., Inc.*, 438 F. Supp. 2d 479, 486-87 (D. Del. 2006) ("[F]ailures by those skilled in the art (having possession of the information disclosed by the publication) are strong evidence that the disclosure of the publication was nonenabling.") (quoting *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985)).  But in determining whether to institute, the PTAB is required to resolve all factual disputes in favor of the petitioner, and thus, it is not surprising that the PTAB instituted on the record before it.

Whether resolved in this case or the PTAB, the factual questions presented in the *Wands* factual questions warrant the complete and fulsome development of a factual record regarding unpredictability in the art, and whether the alleged invention of Pioneer Hi-Bred does, as Agilent contends, require undue experimentation.  *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008) (holding that the district court correctly concluded prior art lacked enablement where discovery of the method and combination of variables required was sufficiently uncertain and arduous as to require undue experimentation).  And it is notable that Table 8 on which Synthego relies contains dozens of additional sequences beyond the four it cites.  Third party discovery relating to the functionality of those additional designs is something that Agilent should be free to explore.

Even Synthego contends that a more fulsome record than will be available in the PTAB is needed.  As Synthego knows, any discovery beyond deposing the opposing expert is disfavored in the PTAB.  *See, e.g.*, 35 U.S.C. § 316(a)(5)(A) ("discovery shall be limited to [] the deposition of witnesses submitting affidavits or declarations and [] what is otherwise necessary in the interest of

justice"); 37 C.F.R. § 42.51(b)(1)-(2).  Thus, Synthego took discovery in this proceeding and has indicated that it intends to use in the PTAB testimony that goes to the very factual issues that must be addressed in the *Wands* factors.  Indeed, Synthego filed a separate motion in this Court for the sole purpose of being able to use the discovery it obtained in this case in the IPR proceedings even though the PTAB would never have allowed it to obtain this discovery.  Dkt. 83 at 1, 4-5; Dkt. 74-3 at 5-6.  Synthego's insistence that *this Court's* procedures are essential to determining these complicated issues underscores that *this Court* should decide them, and should do so on the expedited schedule that it already set.   And importantly, Synthego has improperly refused to answer reciprocal discovery from Agilent.

Allowing Synthego to stay this case in is current posture would give Synthego a clear strategic advantage.  Even as to invalidity issues that Synthego *did* raise in the IPRs, Synthego concedes that discovery in this case—and beyond what is permitted in the PTAB—is critical to a determination of the validity issues presented in its IPRs.  Dkt. 83 at 1, 4-5; Dkt. 74-3 at 5-6.  Staying this case now would prevent Agilent from getting equivalent discovery from Synthego and other third parties, and reward Synthego for its improper refusal to meaningfully participate in discovery in a case that it filed.   Thus, at a minimum, discovery should not be stayed.

### 2. The substantial prejudice to Agilent outweighs any benefit of a stay, where the parties are direct and sole competitors in the full service gRNA market.

Synthego built its business by copying Agilent's "landmark" innovations.  Synthego has used Agilent's patented technology to aggressively acquire marketshare in a nascent, fast-growing, multi-billion dollar market.  More specifically, Synthego is Agilent's only U.S. competitor in the full-service gRNA market, across all fields of use.  Dkt. 40 at 21-22.  Synthego has publicly boasted about poaching Agilent's customers and invaluable key opinion leaders by offering infringing products to them for lower prices or no cost at all—and did so at an early growth stage in the research use market.  *See, e.g.*, Dkt. 41-8 at 3.  It is also undisputed that the relevant market is a sticky one, where customers are unlikely to change suppliers—especially as they transition to the purchase of modified gRNAs on a larger scale (and likely larger margin) in the pre-clinical and GMP fields.   As set forth in Agilent's preliminary injunction papers, Synthego's willful

infringement is clear, as it has admitted knowledge of the applications before the patents issued and copying its use of the patented modifications after learning of them in a "landmark" paper in which Agilent inventors are named as co-authors. *See* Dkt. 85-10 (6/8/2022 Resp. Rog. 3). Indeed, not only did ███████████████████████████████████████████████, a document just produced on June 9 further reveals that he ███████████████████████████████████████████████ ███████████████████████████ *Id.* (6/8/2022 Resp. Rog. 3)*;* De Mory Decl., Ex. 3 (2/12/18 Email) (SYNTHEGO-AGI00004815). Synthego's brash disregard for IP rights is not limited to Agilent; that same email identifies ███████████████ of *others* as well.

### 3. Synthego's forum shopping and delay weighs against granting a stay.

By Synthego's account of events, Synthego should have filed its IPRs at least as early as June 2021, when "Agilent sent emails to Synthego about its patents, including threatening legal action." Dkt. 74-3 at 15. "Courts expect accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them." *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 1316549, at *3 (N.D. Cal. Apr. 10, 2017) (*quoting Asetek Holdings*, 2014 WL 1350813, at *5). Indeed, Synthego could have initiated *inter partes* review ███████████████████████████████████████████████ ███████████████████████████████████████████████ (Dkt. 85-10; De Mory Decl., Ex. 2) and according to Synthego, it has known of the bases for seeking invalidation long before it ever filed this DJ action. Dkt. 74-3 at 3.

Instead, Synthego elected to first invoke the jurisdiction of this Court, knowing full well the substantial work and deadlines the Local Patent Rules require of litigants and the Court, as well as the accelerated pace of patent cases proceeding in this District. N.D. Cal. Patent L. R. (2020). And it did so under what appear to largely false pretenses. Despite being presented with a robust expert report documenting infringement, Synthego did not contest that it practices the asserted claims in its opposition to Agilent's preliminary injunction motion. Moreover, Synthego argued against the sole other noninfringement contention in its initial complaint: that its customers' activities are protected by the safe harbor. It is unclear that the safe harbor provision even applies

here, but in any event, Synthego has now made clear that the vast majority of its sales are for Research Use Only—and cannot be used to seek FDA approval and cannot fall within the safe harbor exemption. Similarly, Synthego has made clear that post-FDA approval uses of its modified guide RNAs likewise are not subject to the safe harbor. And for the narrow bucket of uses that could potentially be exempt, Synthego did not establish that single sale or use falls within the safe harbor in its opposition to Agilent's preliminary injunction motion.

Synthego complains that Agilent delayed in filing its preliminary injunction motion. But that motion establishes the substantial harm that Synthego's continued efforts to sell into the GMP market will inflict on Agilent, regardless of Agilent's offer of a license for the Research Use Only field. In contrast, Synthego has been monitoring ███████████████████████████████████████████████████████████████████, yet waited to file its IPRs until January of 2022. The timing of Synthego's IPRs, following its filing of this action, belies the tactical purposes of its stay request and these facts alone merit denial. *See, e.g., Cronos Technologies LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2016 WL 1089752, at *2 (D. Del. Mar. 21, 2016) (infringer's delay in requesting reexamination "results in a situation in which a stay would be unduly prejudicial to [patentee] and would present [patentee] a clear tactical disadvantage"). Here, the timing of Synthego's pursuit of a parallel proceeding, challenging the validity of patents, months after demanding remedies from this Court having nothing to do with validity, warrants an inference that Synthego "is seeking an inappropriate tactical advantage." *Id*.

## IV.   CONCLUSION

The state of this case, the fact that it will continue regardless of the IPR results and can be efficiently and completely resolved by this Court on the expedited schedule already set, and the prejudicial and tactical disadvantage of a stay, all weigh in favor of exercising this Court's discretion to deny the stay. At a minimum, neither discovery nor claim construction should be stayed, as both will impact the IPR proceedings, as well as the subsequent proceedings in this case, which are ready well underway. Accordingly, Agilent respectfully requests that this Court deny the stay, or at a minimum, allow discovery to proceed as set forth herein.

Dated: June 29, 2022

Respectfully submitted,

*/s/ Denise De Mory*
Denise De Mory (SBN 168076)
Richard Lin (SBN 209233)
Aaron R. Hand (SBN 245755)
Brenda Entzminger (SBN 226760)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, Ca 94063
(650) 351-7241 Telephone
(415) 426-4744 Facsimile
ddemory@bdiplaw.com
rlin@bdiplaw.com
ahand@bdiplaw.com
bentzminger@bdiplaw.com

Attorneys for Defendant/Counter-Claimant
*Agilent Technologies, Inc.*