Denise De Mory (SBN168076)
Richard Lin (SBN 209233)
Aaron Hand (SBN 245755)
Brenda Entzminger (SBN 226760)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
ddemory@bdiplaw.com
rlin@bdiplaw.com
ahand@bdiplaw.com
bentzminger@bdiplaw.com

Attorneys for Defendant/Counter-Claimant
*Agilent Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYNTHEGO CORPORATION,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>　　v.<br><br>AGILENT TECHNOLOGIES, INC.,<br><br>　　　　Defendant/Counter-Claimant. | CASE NO. 5:21-cv-07801-EJD<br><br>**DEFENDANT/ COUNTER-CLAIMANT AGILENT TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF SYNTHEGO CORP.'S MOTION TO STRIKE** |

I.  **AGILENT PROPERLY RESPONDS TO EVIDENCE SYNHTEGO SUBMITTED IN ITS RESPONSE.**

Nearly six months have passed since Agilent filed its preliminary injunction motion. Depositions have been taken, documents have been produced, and circumstances have changed. All of this was known to Synthego and addressed by Synthego it its Opposition. Agilent's response was appropriate and limited to issues raised in Synthego's Opposition. Simply put, the evidence cited in Agilent's reply brief "is not new evidence [since] it is submitted to rebut arguments raised in the opposition brief." *Applied Materials, Inc. v. Demaray LLC*, No. 5:20-cv-5676-EJD, 2020 WL 8515132 (N.D. Cal. Dec. 16, 2020) (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 2013 WL 6577143, at *1 (N.D. Cal. Dec. 13, 2013). Thus, as set forth below, Agilent's response should not be stricken, nor should a sur-reply be permitted.

    A.  **Agilent's proposed injunction is within the scope of the requested injunction.**

In the Ninth Circuit, injunctions must be narrowly tailored to address the harm alleged. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009). Agilent filed its preliminary injunction motion without the benefit of any discovery. Synthego insisted that discovery happen in the intervening five-month period before it filed a response. In that response, Synthego came forward with evidence that was not previously available to Agilent, to which Agilent rightly responded.

In particular, Synthego opposed Agilent's requested relief on the basis that it was overbroad because the proposed injunction covered a market (RUO) in which Synthego claims that it does not regularly encounter Agilent, and in which Agilent offered it a license. Synthego likewise argued that Agilent cannot be harmed in the preclinical or "midscale" market because the "safe harbor" exemptions protect those sales. The narrowed injunction that Agilent now proposes addresses the harm to Agilent while at the same time mitigating impacts to the market and Synthego. There is nothing extraordinary about doing so as the Court must narrowly tailor any injunction,[1] nor does the proposed narrowing require a sur-reply.

---

[1] *See, e.g.*, *Right to Life of Cent. California v. Bonta*, 562 F. Supp. 3d 947 (E.D. Cal. 2021) (plaintiff agreed to narrowed injunction at hearing, which was granted).

In contrast to the RUO and preclinical markets, Synthego does not legitimately dispute the harm to Agilent in the therapeutic market. In its reply, Synthego devotes only two paragraphs to the therapeutic market (Dkt. 74-3 at 20:22-21:7), in which if focuses only on whether Mr. Carter could identify particular sales that were lost to Synthego. But specific lost sales are difficult to prove in an extremely secretive market, and in any event, are not the only harm Agilent identifies in this market. Even in its proposed sur-reply, Synthego does not legitimately dispute the potential harm in terms of price erosion and the stickiness of the market. Finally, stickiness does not undercut the harm to Agilent; to be clear, Agilent is harmed by all of Synthego's actions, but Agilent narrowed the requested relief to address the harm to Agilent while minimizing impact to Synthego.

Finally, Synthego claims that any injunction will hurt it, but does so solely in attorney argument. But in any event, Synthego has known about the applications for these patents and watched them since before they issued. If Synthego actually believed they were invalid as it now claims, it could have acted earlier. This argument adds nothing to the already developed record.

### B. The institution decisions do not refute likelihood to succeed.

Synthego filed its opposition with the IPR institution decisions in hand. In fact, the IPR institution decisions themselves (rather than the underlying prior art or expert analysis thereof, most of which Synthego elected not to submit to the Court) are the primary evidence on which Synthego relies to oppose the preliminary injunction. As such, Agilent's reply brief addresses what Synthego featured in its Opposition—those newly issued decisions. Agilent's reply arguments should come as no surprise, nor do they warrant providing Synthego a further response.

Agilent addressed Synthego's arguments about the institution decisions in reply, as intended under the rules. And the cases that Agilent cites in its brief establish—contrary to Synthego's implication in its Opposition—that an institution decision is not controlling, that a patent is maintains its presumption of validity unless and until mandate issues on a final appeal, and that an accused infringer does not meet its burden to establish a substantial question of validity with institution decisions alone. *See, e.g.*, *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1201 (Fed. Cir. 2017) (the patent challenger put all of the same evidence from the IPRs before the district, and ultimately the final written decision invalidating the claims before the Federal Circuit,

but the Federal Circuit refused to vacate the injunction entered in the district court's discretion under the district court standard).

As the IPR decisions reflect on their face, the standard for institution is "a reasonable likelihood" of prevailing on at least one challenged claim. The PTAB made various comments regarding both the strength and weakness of Synthego's positions. But Synthego does not challenge the statistics that 81% are instituted but only 17% result in all claims invalidated, even in its proposed sur-reply. Put simply, "the decision to institute IPR proceedings is a factor that should be considered, but is by no means dispositive, when evaluating a Plaintiff's likelihood of success on the merits at the preliminary injunction stage." *M-I LLC v. Fpusa, LLC*, No. SA:15-CV-406-DAE, 2016 WL 6088344, at *6 (W.D. Tex. Oct. 17, 2016) (*citing Procter & Gamble Co. v. Kraft Foods Global, Inc*., 549 F.3d 842, 847 (Fed. Cir. 2008)).

This Court must make its own independent assessment as to whether Synthego raised a substantial question of validity, and Synthego did not even put most of the evidence from the IPR proceedings before this Court, so it has no basis to do so. Taking the facts and evidence of record, this Court should exercise its discretion to enter injunctive relief, and at a minimum, deny Synthego's motion to stay given the likely harm to Agilent. *See Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 221CV09011RGKGJS, 2022 WL 2047615, at *4 (C.D. Cal., Feb. 2, 2022) (denying stay after IPR petitions granted in view of the totality of circumstances, including unreasonable delay caused by stay, undue prejudice to patent owner, harm to market, and difference in standards applied by courts and the PTAB).

**C.   Agilent's evidence of infringement of the dependent claims weighs in favor of an injunction and against a stay.**

Even in its proposed sur-reply, Synthego overstates the import of the institution decision as allegedly indicating that Synthego is likely to succeed on all instituted claims. But that is not accurate, and Agilent was free to point that out in reply. As to claim 14, the PTAB expressed skepticism about obviousness grounds that involve combining modifications that are not exemplified or disclosed in Pioneer Hi-Bred Table 8. Dkt. 77-1 at 30-31. Synthego notes that claim 14 is not listed, but does not dispute that the Board cited to Synthego's own reference

showing that "only six days before the priority date of the '034 Patent…it was unknown whether fluorescent proteins or molecules **could be** coupled to guide RNA." *Id*. at 31 (quoting Resp. at 48). And Synthego does not dispute that the Board found such evidence "may ultimately be persuasive to undermine Petitioner's showing for ground six," in which Synthego challenged the two claims that recite a fluorophore modification: claims 14 and 29.

As to the PACE and thioPACE modifications, Synthego does not dispute that it is unlikely to succeed in invalidating these claims. Instead, Synthego claims that it does not use them. But Synthego has refused to provide discovery to substantiate this claim. *See* Opp'n to Mot. to Stay (Dkt. 94-2) at 3-4, 8.

### D. Agilent's evidence is sufficient, and Synthego should be admonished for its failure to participate in discovery.

Informal discovery dispute procedures only work if both parties participate in them in good faith. When one party uses them as an opportunity to seek a procedural advantage, they fail. That is exactly what Synthego has done here.

To suggest that Agilent has not been diligent is disingenuous. To the contrary, the lengths that Synthego has gone to hide relevant information are very troubling, and its recent conduct evidences the lengths to which it will go. Although Agilent served discovery requests in February, Synthego did not produce documents until late April. Agilent raised its concerns about Synthego's deficient discovery responses in e-mails and letters dated February 27, March 13, March 26, May 4, May 18, June 18, June 19, and June 20; and on calls held on February 28, March 10, April 4, May 11, and June 27. Most notably, on May 11 in a lead-lead call, counsel for Synthego assured Agilent that Synthego's improper redactions would be addressed and separately insisted that Synthego's counsel could not respond to the preliminary injunction filed in January because counsel was too busy. As a professional courtesy, Agilent's counsel agreed to that request for more time, which necessitated moving the instant hearing date. But it took a half a dozen additional written communications and a further call until Synthego removed redactions that should never have occurred in the first instance, and it did so at 9:00 P.M. on June 29. But Synthego refused to remedy any other discovery deficiencies and has refused to authorize Agilent to file a joint

discovery letter with Judge Van Keulen after editing Agilent's portion of the letter. *See* Exhibit 1 hereto.

### E. Agilent appropriately rebutted Synthego's arguments regarding the market with evidence Synthego produced in discovery.

Evidence produced after Agilent filed its Motion shows that Synthego itself believes that Agilent is its only competitor in all three of the market segments that Synthego identified in its opposition. That evidence undercuts Synthego's position put forth for the first time in its opposition that it does not encounter Agilent in the RUO market, and is a factor that the Court should consider in assessing irreparable harm. Agilent does not contend that it is substitute for irreparable harm; Agilent has provided ample other evidence of irreparable harm. *See* Mot. (Dkt. 39-3) at 20-24 & Reply (Dkt. 85-2) at 9-13. Most notably, Synthego's admissions about its competition with Agilent highlight the impact of its deliberate pricing strategy, which the evidence shows was a pervasive strategy that, unlike a particular lost sale, cannot be compensated in money. *See* Mot. (Dkt. 39-3) at 21-22.

### F. Agilent has not changed its explanation so no sur-reply is warranted.

As it explained in its opening papers, Agilent began contacting companies after the '034 issued in January of 2021. There is no dispute about that. Nor is there any dispute that January 21 was (hopefully) the mid-point in a global pandemic. Thus, Agilent's point on reply is merely that its modest delay is reasonable under the circumstances.

| | | |
|---|---|---|
| 1 | Dated: July 5, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | | */s/  Denise M. De Mory* |
| | | Denise De Mory (SBN 168076) |
| 4 | | Richard Lin (SBN 209233) |
| | | Aaron R. Hand (SBN 245755) |
| 5 | | Brenda Entzminger (SBN 226760) |
| | | BUNSOW DE MORY LLP |
| 6 | | 701 El Camino Real |
| | | Redwood City, Ca 94063 |
| 7 | | (650) 351-7241 Telephone |
| | | (415) 426-4744 Facsimile |
| 8 | | ddemory@bdiplaw.com |
| | | rlin@bdiplaw.com |
| 9 | | ahand@bdiplaw.com |
| 10 | | bentzminger@bdiplaw.com |
| 11 | | Attorneys for Defendant/Counter-Claimant |
| | | *Agilent Technologies, Inc.* |