

701 El Camino Real
Redwood City, CA 94063
+1 (650) 351-7248

Denise M. De Mory
Direct: +1 (650) 351-7241
ddemory@bdiplaw.com

November 30, 2022

Honorable Edward J. Davila
Robert F. Peckham Federal Building
& United States Courthouse
280 South 1st Street
San Jose, CA 95113

    Re:    **Letter Brief Requesting that Status Quo Be Maintained and Relief from Stay Denied (Filed Pursuant to Dkt. 126), Case No. 5:21-cv-07801-EJD (SVK)**

Honorable Judge Davila:

    Agilent Technologies, Inc. respectfully requests that the case remain stayed pending the resolution of the IPRs. On July 12, 2022, this Court granted Synthego Corporation's motion to "stay [this case] in its entirety pending IPR." Dkt. 107 at 7. Now, Synthego wants the Court to reconsider and modify its July 12 order staying the case "in its entirety" so that Synthego, and only Synthego, can supplement the record in the IPRs. But there is no basis or good cause to reconsider the Court's July 12 Order. To the contrary, changing the status quo at this late stage of the IPR proceedings would be highly prejudicial, particularly given Synthego's delay in seeking the instant relief from an order it asked this Court to enter.

    After the IPRs were instituted, Synthego had a full and fair opportunity to have the issue of whether and to what extent it could use discovery from this case in the IPRs resolved, but made a deliberate and strategic decision not to do so. Agilent opposed Synthego's request to stay the case. In the alternative, however, Agilent requested that it be permitted to take some additional discovery even if the case was otherwise stayed. In the event that Synthego was permitted to use discovery it obtained from Agilent in this case in the IPRs, Agilent requested the opportunity to take commensurate discovery from Synthego. With the very issues Synthego is now asking Judge van Keulen to decide fully briefed and ripe for resolution back in June, Synthego nonetheless asked

this Court to stay this case in ***its entirety*** to foreclose Agilent's opportunity to pursue this additional discovery. Synthego insisted that further discovery here was unnecessary since both parties could obtain discovery in the PTAB: "*just because discovery in this case happens to also be relevant to the IPRs does not mean that it would be impossible to obtain such discovery in the PTAB.…Agilent has failed to explain why the PTAB rules are insufficient for the PTAB to adjudicate the IPRs.*" Dkt. 98-2 at 7:11-23 (emphasis added).

The Court agreed with Synthego and gave it the exact relief it requested. It stayed this case in its entirety, denying both Agilent's request to take countervailing discovery and the fully briefed motions that would have resolved whether Synthego could use district court discovery in the IPRs. Dkt. 107 at 7. Thus, the status quo as of this Court's July 12 Order (and now) is that neither party could use designated materials from this case (or obtain any additional discovery in this Court) absent some further Order from this Court.

Synthego then took no action for over two months. Instead, Synthego waited until September 15, 2022—five days before Agilent's Patent Owner Responses ("PORs") were due—to advise Agilent that it intended to renew its efforts to seek permission to use discovery from this case in the IPRs.[1] Synthego's delay, deliberate or not, had the maximum prejudicial effect on Agilent. Agilent's Patent Owner Responses ("PORs") filed on September 21 were its last opportunity to supplement the factual record. In fact, if Synthego is permitted to significantly change the PTAB evidentiary record as it now requests, Agilent's only recourse would be to file evidentiary objections, which would not be resolved until the Final Written Decision in the IPRs.

---

[1] When Judge van Keulen asked why Synthego waited to renew its motions, Synthego claimed a need to first see Agilent's PORs. Dkt. 130 (11/15/22 Hr'g Tr.) at 45-47. But Synthego already requested de-designation of the transcripts for use in the IPRs in June, and rekindled the issue *before* the PORs were filed. *E.g.*, Dkts. 83, 90 (June briefing); Dkt. 120-2 (9/15/22 email).

Agilent would be forced to devote its limited remaining PTAB argument time and briefing to addressing evidentiary issues as well as arguing the merits without any clarity on the scope of the final record. The potential prejudice of expanding the record now is compounded by the standard of review for PTAB decisions, which is a highly deferential "substantial evidence" standard.[2]

Synthego can't legitimately support its need for these materials either.  Agilent relied only on public materials in its PORs; Synthego can meet that evidence without the need to use Agilent's discovery materials from this case.  And in any event, as it successfully argued in precluding Agilent from taking additional discovery before the case was completely stayed, it could and should have requested any such discovery in the PTAB.  Put simply, Synthego can't establish good cause to revisit or modify the Order it requested, but in any event, any good cause or argument Synthego makes in favor of relief from the stay or to use the discovery materials from this case in the IPRs is outweighed by the significant prejudice to Agilent.

Synthego will likely argue that Agilent agreed to lift the stay by stipulating to a briefing schedule on the issues heard by Judge van Keulen on November 15.  Not so.  In all of Agilent's efforts to work cooperatively with Synthego to resolve disputes, Agilent never agreed that it would not raise the procedural posture of this case, i.e., the stay, to oppose Synthego's requests to use discovery from this case in the IPRs.  Of course, parties cannot simply agree to reconsider or modify such a Court Order via a briefing schedule stipulation. But in any event, Agilent took affirmative action because Synthego claimed that Agilent had waived all rights to protect the confidentiality of any challenged discovery materials and that Synthego was free to make all of Agilent's discovery materials public absent Court intervention.  Agilent was left with no choice but to act.  Synthego's request to lift or modify the stay in any manner should be denied.

---

[2] Use of the materials in the PTAB also risks Agilent's ability to protect their confidentiality.

**I.      The procedural history weighs heavily against lifting the stay.**

On October 5, 2021, Synthego preemptively filed this case, seeking a declaration that its products did not infringe because they fall within the safe harbor provisions of § 271(e)(1). Dkt. 1. It admitted filing to secure venue in this forum, file an IPR, and then seek to stay its own case. Dkt. 1 at 1 n.1. But later, when Agilent sought a preliminary injunction, Synthego admitted that, at best, the safe harbor provisions could exempt only some of its sales from damages. Thus, Synthego knew when it filed the case that its DJ complaint would not and could not resolve the controversy between the parties.

Synthego filed its IPRs on January 4, 2022. On January 18, 2022, Agilent filed a preliminary injunction motion supported by the expert declaration of Dr. William Marshall and the declaration of Agilent Associate Vice President Gary Carter. Dkts. 40, 42-43. Synthego requested expedited discovery, and the Court encouraged the parties to prioritize the PI discovery. Dkt. 49. Agilent and Synthego agreed on the scope of the expedited discovery.[3] Dkt. 113-2. The parties also agreed to proceed under the Court's default protective order, which bars the use of protected materials in other proceedings. S*ee* Dkt. 127 § 7.1.[4]

The IPRs were instituted on May 31, 2022. Synthego opposed Agilent's injunction motion on June 3, 2022. Although it cited only limited portions of deposition testimony, Synthego filed the entire transcript for each Agilent witness it deposed, forcing fulsome briefing on whether the

---

[3] As set forth in the briefing filed with Judge van Keulen, Agilent contends that Synthego wildly exceeded the scope of the parties' agreement, which is an independent basis for precluding their use in the IPRs. Dkt. 113 at 1-3, 5-8; Dkt. 121 at 4-8.

[4] On November 15, 2022, notwithstanding the parties' agreement to abide by the default order, Judge van Keulen filed a signed order, which was entered on November 16th. Dkt. 127.

deposition transcripts could be used in the IPR proceedings.[5] Synthego argued for de-designation of every page of every Agilent deposition it took in discovery in this case (the Marshall, Ryan, Carter, and Redder transcripts and various exhibits thereto) so that Synthego could use the depositions and exhibits in the PTAB. *See, e.g.*, Dkts. 83, 90, 106. Agilent opposed on confidentiality and other evidentiary grounds. Dkts. 80, 103, 112.

Synthego moved to stay the proceedings "in their entirety" when the IPRs were instituted. Dkt. 81-3. Agilent opposed. At a minimum, Agilent requested permission to take limited additional discovery, particularly if Synthego was allowed to use the designated materials in the IPR proceedings. Dkt. 95 at 15. Agilent requested the additional discovery because of the prejudicial imbalance that resulted from Synthego's refusal to participate in discovery in good faith. Agilent produced almost 90,000 pages and witnesses for deposition whereas Synthego, who filed the suit, produced only 195 documents, mostly prior art and improperly redacted documents. Dkt. 95 at 12. Synthego insisted that the Court could and should stay the case because both parties could obtain discovery in the PTAB. Dkt. 98-2 at 7.

On July 12, 2022, the Court granted Synthego's motion and stayed the case in its entirety. Dkt. 107 at 7. The Court accepted Synthego's representations that *both* parties could utilize PTAB rules to get discovery in the PTAB, and denied all pending motions—including the motions that were fully briefed and would have determined if discovery materials from this case could be used in the PTAB without prejudice to renew *after the stay is lifted*. *Id*. at 5, 7.

---

[5] Synthego's gamesmanship continues. On October 24, Synthego again filed entire copies of three deposition transcripts with 19 exhibits, none of which were necessary to support Synthego's motion. *See* Dkts. 114-3 to -23. And, even though it stipulated not to dispute the designations applied to Mr. Carter's deposition transcript or exhibits, Synthego requested that the Court deny sealing of those materials. *Compare* Dkt. 111 at 1:7-8, *with* Dkt. 118-2.

On September 15, 2022—days before Agilent's POR were due—Synthego revealed its intent to take action to change the status quo so that it could use designated materials in the PTAB. Dkt. 120-2. In subsequent discussions, Synthego confirmed that *it* would take action to raise its request with the Court. Then, on October 12, Synthego's counsel sent a "gotcha" email, asserting that the transcripts and related exhibits were automatically de-designated and fully public and available for use in the PTAB (and elsewhere). Synthego claimed that the default protective order required Agilent to file a motion within 21 days of the September 15 email, even though the case was stayed. According to Synthego, Agilent's failure to do so meant that all challenged materials were public. Dkt. 109. Agilent immediately initiated proceedings to prevent this result (Dkt. 109), and thereafter stipulated to a briefing schedule. Agilent preserved all objections to use of the discovery materials in the IPRs, including that the case was stayed. *See*, *e.g.*, Ex. 1 (attached) (10/13/22 Email chain); Dkt. 113 at 2.

The IPR proceedings are nearing completion. The only discovery that Synthego requested in the IPRs was to depose Agilent's IPR declarants. Synthego deposed Agilent declarant and inventor Jeff Sampson on November 17, and will depose Agilent's IPR expert Dr. William Marshall on December 8, at which point IPR discovery will be closed. Synthego's IPR reply, with which it hopes to significantly expand the IPR record through the instant proceedings, is due December 13; Agilent's sur-reply is due January 13. Per PTAB rules, a "sur-reply may not be accompanied by new evidence other than deposition transcripts of the cross-examination of any reply witness" and is a limited submission of no more than 5,600 words. PTAB 2019 Practice Guide at 38 (word count), 73 (content).

**II.**     **Synthego cannot satisfy the legal standards for reconsideration, particularly of an order it requested.**

In the Ninth Circuit, district courts possess "the inherent procedural power to reconsider, rescind, or modify an interlocutory order" when they find sufficient cause to do so. *City of Los*

*Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). These issues are committed to the sound discretion of the court, although they typically involve showing new evidence, an intervening change in the law, or circumstances necessary to prevent manifest injustice. *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178–79 (9th Cir. 1998); *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). The inherent power of a court to manage its docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

Under Civil L.R. 7-9, a party may not file a motion for reconsideration without first obtaining leave of Court. A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

**III.     There is not good cause to reconsider or modify the stay order, or allow use of the discovery materials, and the prejudice to Agilent outweighs any purported basis for doing so.**

Synthego filed this case on questionable declaratory judgment grounds with the express intention to file IPR Petitions and then seek a stay. It successfully carried out this strategy to the letter. There is no basis to grant Synthego relief it intended from the start to request, and ultimately obtained. Synthego's requests to modify the protective order, de-designate transcripts and exhibits, and overrule Agilent's objections are not "ministerial actions" that should proceed while the case is stayed. Synthego already had a full and fair opportunity to raise all these issues—and did, but then opted to forego resolution of these issues in favor of staying the case in its entirety to prevent Agilent from developing a countervailing evidentiary record. There is no good cause to lift the stay. In fact, there is not even a good faith basis to seek relief. The procedural posture of this case and status of the PTAB evidentiary record are solely the result of Synthego's deliberate strategic decisions.

The issues that Synthego seeks to raise if the stay is lifted are not new. Synthego had a full and fair opportunity to have these issues, that were already fully briefed, resolved in June but it strategically opted not to do so. Instead, it pressed for a complete stay so that it could prevent Agilent from taking any countervailing discovery that Agilent might seek permission to use in the IPRs. Indeed, Agilent opposed staying discovery to mitigate the tactical advantage posed by Synthego's discovery misconduct—namely, Synthego's failure to respond to discovery while at the same time taking discovery to use in the IPR proceedings—if the Court had ruled on the already briefed motions in Synthego's favor. Dkt. 95 at 5-8. But Synthego convinced the Court to stay the case in its entirety.

To achieve this result, Synthego successfully (mis)led the Court to conclude that both parties could readily obtain discovery in the PTAB. Dkt. 107 at 4-5. But Synthego knew the PTAB discovery limits, and in fact, never sought any discovery other than routine depositions there. Aside from the following "Routine discovery []: (1) production of any exhibit cited in a paper or testimony; (2) the cross-examination of the other sides declarants; and (3) relevant information that is inconsistent with a position advanced during the proceeding," any "additional discovery" in an IPR by requires an agreement with the other party, or establishing via motion to the PTAB that the requested discovery is needed in the "interests of justice." PTAB 2019 Practice Guide, §§ I(F)(1) & I(F)(2). Prior authorization is required to even file such a motion, and the PTAB expects, that absent later discovered need, a party will raise any intended motions in a call scheduled within one month of institution (in this case by June 30, 2022), which deadline passed with Synthego's filing of its reply brief in support of the stay. *Id*. §§ II(A)(2) & II(E).

As Agilent explained in its briefing to Judge van Keulen (Dkts. 113, 121), it would be highly prejudicial to condone Synthego's use of the district court to obtain discovery as an end-run around the PTAB's procedures, which violated this District's longstanding precedent that a

party does not have the right "to develop discovery in federal court to be used in another forum." *Roche Molecular Systems, Inc. v. Cepheid*, 2015 WL124523, at *7 (N.D. Cal. Jan. 7, 2015). This is particularly true after having successfully precluded Agilent's efforts to obtain countervailing discovery by convincing the Court PTAB discovery was sufficient.

Synthego's delay also weighs heavily against reconsideration. Synthego took no affirmative action in this Court to clarify that it wanted relief from the stay that it requested until *after* Agilent filed its PORs. Those PORs, filed on September 21, were Agilent's last opportunity to submit evidence in the PTAB. Thus, Agilent is now precluded from, for example, submitting further a Marshall declaration or a Ryan declaration to explain or elaborate on any answers provided in their March 2022 depositions, which covered topics for which they were not prepared to testify, or had not yet formulated opinions when deposed. Agilent had no incentive to secure re-direct testimony when its witnesses were deposed in this proceeding (since, of course, Agilent would have the opportunity to offer their direct testimony as live witnesses at a trial in this proceeding or), nor to waste valuable real estate in its PORs because there was no indication that Synthego intended to re-raise discovery issues until days before they were due. These facts also exacerbate prejudice resulting from Synthego's disregard of the parties' agreement regarding the scope of discovery, and further weigh against reconsideration, especially given the "substantial evidence" standard of review in the PTAB.

Moreover, there is no compelling reason to consider allowing Synthego to lift its requested stay to expand the record at this late date. Agilent supported its PORs with only public information, including an expert declaration from Dr. William Marshall on validity issues, a fact declaration from Dr. Jeffrey Sampson related to Agilent's synthesis and testing of the gRNAs described in Agilent's patents, and most importantly, public Synthego admissions about copying and the value of Agilent's patents, and other public praise to support secondary considerations of

non-obviousness. Synthego can meet this evidence without any need for discovery materials in this case, further weighing against any claim that the need to use materials somehow supports good cause (which it can't in any event). Synthego already deposed Dr. Sampson in the IPR and will depose Dr. Marshall on December 8, mitigating any claim of prejudice by Synthego.

If Synthego believed it was entitled to use discovery from this proceeding, it should have sought relief from its stay long ago. Synthego decided to lie in wait, and then play "gotcha," asserting automatic de-designation while its own requested stay was in force.

Synthego's efforts to lift the stay and for a modification of the protective order are requests for reconsideration that are procedurally defective under the Local Rules. Synthego cannot identify an intervening change in circumstances or any manifest injustice that would result from a change in the status quo, on which Agilent relied in formulating its POR briefs and strategy. *See Kona*, 229 F.3d at 883. To the contrary, the Court should maintain an "even balance," particularly given the late stage of the IPR proceedings, and deny Synthego relief from the stay that it requested be entered while the same issues were on the table for consideration. *See Landis*, 299 U.S. at 254–55. The Court should not lift the stay for Synthego to present a defective request for reconsideration.

In weighing the competing interests, the Court should deny Synthego's request for relief from the stay given the undue (and calculated) prejudice that would be caused to Agilent.

**IV.     Conclusion.**

The stay should remain in force consistent with this Court's prior Order (Dkt. 107).

Dated: November 30, 2022                    Respectfully submitted,

*/s/ Denise M. De Mory*
Aaron Hand (SBN 245755)
Denise M. De Mory (SBN 168076)
Richard Lin (SBN 209233)
Brenda Entzminger (SBN 226760)
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, Ca 94063
(650) 351-7241 Telephone
(415) 426-4744 Facsimile
ahand@bdiplaw.com
ddemory@bdiplaw.com
rlin@bdiplaw.com
bentzminger@bdiplaw.com

Attorneys for Defendant/Counter-Claimant
*Agilent Technologies, Inc.*